UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMANDA M. E.,[1] | ) | CIVIL ACTION NO. 4:22-CV-0992 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI | ) | |
| *Acting Social Security Commissioner*, | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

Plaintiff Amanda M. E., an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.

certified administrative transcript, the Court finds the Commissioner's final decision is not supported by substantial evidence. Accordingly the Commissioner's final decision will be VACATED and this case will be remanded pursuant to sentence four of 42 U.S.C. § 405(g). This result is required because the ALJ does not explain why he discounted Plaintiff's testimony regarding her urinary frequency or what evidence in the record supports his finding of five bathroom breaks as a sufficient accommodation.

## II. BACKGROUND & PROCEDURAL HISTORY

On December 12, 2019, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 15; Doc. 15-2, p. 16). In this application, Plaintiff alleged she became disabled on July 11, 2019, when she was 27 years old, due to the following conditions: amenorrhea, bipolar 1 disorder (depressed severe), cerebral cysts, chronic bilateral, low back pain with bilateral sciatica, severe obesity, epigastric pain, gait disturbance, generalized abdominal pain, gastroesophageal reflux disease ("GERD"), hypersomnia, oppositional defiant disorder, osteoarthritis of the spine with radiculopathy (lumbar), polycystic ovarian syndrome ("PCOS"), radiculopathy of lumbar region, restless leg syndrome, right wrist pain, spondylosis of lumbar spine, urge incontinence of urine, and asthma. (Admin. Tr. 267; Doc. 15-6, p. 25). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend,

stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, get along with others and sometimes her ability to use her hands. (Admin. Tr. 314; Doc. 15-6, p. 72). Plaintiff has a high school education. (Admin. Tr. 268; Doc. 15-6, p. 26). Before the onset of her impairments, Plaintiff worked as a sweeper. (Admin. Tr. 29; Doc. 15-2, p. 30).

On July 8, 2020, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 120; Doc. 15-3, p. 20). On January 19, 2021, Plaintiff's application was denied on reconsideration. (Admin Tr. 153; Doc. 15-3, p. 53). On January 26, 2021, Plaintiff requested an administrative hearing. (Admin. Tr. 15; Doc. 15-2, p. 15).

On April 30, 2021, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge Howard Kauffman (the "ALJ"). (Admin. Tr. 15; Doc. 15-2, p. 16). On June 10, 2021, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 15-31; Doc. Doc. 15-2, pp. 16-32). On June 18, 2021, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 4; Doc. 15-2, p. 5).

On May 17, 2022, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. pp. 1-5; Doc. 15-2, pp. 2-6).

On June 22, 2022, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the law. (Doc. 1). As relief, Plaintiff requests that the court reverse the decision of the Appeals Council as it relates to its denial of the request for review of the decision of the ALJ and award Plaintiff benefits. (Doc. 1, pp. 7-8). However, "No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review."[2] The Court construes Plaintiff's request as a request to reverse the administrative decision of the ALJ or remand Plaintiff's case for a new hearing.

On September 6, 2022, the Commissioner filed an answer. (Doc. 14). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 14). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Docs. 13-22).

Plaintiff's Brief (Doc. 26) and the Commissioner's Brief (Doc. 28) have been filed. Plaintiff did not file a reply. This matter is now ready to decide.

---

[2] *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001).

### III.  LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals, including the standard for substantial evidence review, and the guidelines for the ALJ's application of the five-step sequential evaluation process.

#### A.  SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[3] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[5] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[6] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions

---

[3] *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).
[4] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[5] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
[6] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[7] In determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[8]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. ––––, ––––, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated*

---

[7] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[8] *Matthews*, 239 F.3d at 593 ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

*Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[9]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[10] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[11]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular

---

[9] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[10] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[11] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[12]

### B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[13] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[14]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[15] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do

---

[12] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).
[13] 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).
[14] 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).
[15] 20 C.F.R. § 416.920(a).

any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[16]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[17] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[18]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[19]  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[20]

---

[16] 20 C.F.R. § 416.920(a)(4).
[17] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1).
[18] 20 C.F.R. § 416.945(a)(2).
[19] 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.
[20] 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

## IV. DISCUSSION

Plaintiff raises the following issues in her brief:

(1) Whether the Administrative Law Judge erred and abused his discretion by failing to consider the limitations in Plaintiff's residual functional capacity from those impairments that the Administrative Law Judge considered to be severe, including obesity, asthma, GERD, depression/bipolar disorder, anxiety, headaches, urinary frequency, and a history with bilateral mastectomy and chemotherapy?

(2) Whether the Administrative Law Judge erred and abused his discretion in failing to consider the limitations from those conditions that the Administrative Law Judge did not consider to be severe, or even mentioned in his decision, including Plaintiff's diagnosed and treated breast cancer, idiopathic intracranial hypertension, cerebral cysts, lymphedema of the left arm, migraine headaches, scoliosis/back pain, restless leg syndrome and insomnia?

(3) Whether the Administrative Law Judge erred and abused his discretion in failing to afford proper weight to opinions and limitations from Plaintiff's treating sources, Dr. Nhien Nguyen, Dr. David Keller and Dr. Al-Noor, as compared to the opinions from the State Agency Consultants?

(Doc. 26, pp. 1-2).

We begin our analysis by summarizing the ALJ's findings, then will address whether substantial evidence supports the ALJ's decision.

### A. THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION(S)

In his June 2021 decision, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process. The ALJ found Plaintiff was

not disabled at step four because she could return to past work. The ALJ also concluded Plaintiff could engage in other work in the alternative.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between July 11, 2019 (Plaintiff's alleged onset date) and June 10, 2021 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 17; Doc. 15-2, p. 18).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: obesity, asthma, GERD, depression/bipolar disorder, anxiety, headaches, urinary frequency, and a history with a bilateral mastectomy and chemotherapy . (Admin. Tr. 18; Doc. 15-2, p. 19).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 19-20; Doc. 15-2, pp. 19-21).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 416.967(b) subject to the following additional limitations:

> she can sit, stand, or walk for 6 hours each per 8-hour workday with no concentrated exposure to fumes, dusts, gases, odors, or poor ventilation, and she may have 5 bathroom breaks- 1 at lunch, 1 each at morning and

> afternoon breaks, 1 each before and after work. She is limited to simple repetitive routine tasks, cannot work at production rate pace, she can occasionally interact with the public, coworkers, supervisors, and she can occasionally set goals or make plans independently of others.

(Admin. Tr. 20; Doc. 15-2, p. 21).

At step four, the ALJ found that, during the relevant period, Plaintiff could engage in her past relevant work. (Admin. Tr. 29-31; Doc. 15-2, pp. 30-32). The ALJ made alternative findings for step five and found that Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 30; Doc. 15-2, p. 31). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: cleaner housekeeper (DOT 323.687-014); bakery worker, conveyor line (DOT 524.687-022); and a small products assembler (DOT 706.684-022). (Admin. Tr. 30; Doc. 15-2, p. 31).

### B.   WHETHER THE ALJ'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff alleges that the ALJ erred by

> setting forth a limitation in Claimant's RFC related to her need to use the restroom during the workday at five (5) times per day (while he noted that two (2) of them could before or after work), which number is arbitrary and not supported by the record in this matter, and his finding that Claimant would be able to go to the bathroom at certain specific times of the day, which ignores the medical record and Claimant's testimony on the issue of her urinary frequency and incontinence which does not support a finding that this impairment is controlled by Claimant to the extent that she could be limited to only

> using the restroom at certain times of the day, as opposed to requiring an accommodation that would be needed to allow her to use the restroom at will, and when she would need to, as opposed to on a set schedule.

(Doc. 26, pp. 17-18).

In response, the Commissioner argues:

> [T]he ALJ noted Plaintiff complained of urinary issues, but that Plaintiff also reported that an Interstim device controlled such issues (See Tr. 23, 2293, explaining Plaintiff could "hold her urine for 8 hours at work after placement of the Interstim device"). The device was removed in July 2020, however, Plaintiff planned to have the device reimplanted after she recovered from her surgery, or less than 12-months later (Tr. 23-24, 2346). Regardless, the ALJ accommodated Plaintiff with 5 bathroom breaks (Tr. 20).

(Doc. 28, pp. 17-18).

In his decision, regarding the issue of urinary frequency the ALJ wrote:

> She alleges she has used a neurostimulator to help with urinary frequency.
>
> . . .
>
> The claimant testified regarding incontinence and that the frequency of incontinence affects her everyday function. The above residual functional capacity builds in bathroom breaks for this condition. She does not use adult diapers but she takes a prescription that she hopes will decrease her incontinence. She has used a neurostimulator in the past to help with urinary frequency and this medical treatment was helpful.
>
> . . .
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably

> be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> . . .
>
> Exhibit B45F deals with treatment regarding urinary frequency and pelvic pain. She had an intrastim device placed July 23, 2019. Exhibit B45F/6 indicates that following this placement, she has been able to hold her urine for eight hours at work and she reported resolution of pain although she still had continued urge sensation. Overall, the claimant reported she was quite happy with her response. Treatment records from August 2020 note that due to a fall, there had been some erosion of this device through the skin and therefore, it needed to be removed on July 24, 2020 (Exhibit B45F/21). She reported in September 2020 that her urinary symptoms were returning due to this, she is interested in having an Interstim device reimplanted after she had time to recover from her mastectomy (Exhibit B45F).

(Admin. Tr. 20-21, 23-24; Doc. 15-2, pp. 21-22, 24-25).

Here, the Court is unable to review the ALJ's RFC determination regarding the bathroom break limitations under the substantial evidence standard. In order for the Court to conduct this review, "the ALJ's decision must be accompanied by a clear and satisfactory explication of the basis on which it rests."[21] An "ALJ must indicate in his decision which evidence he has rejected and which he is relying on as

---

[21] *Medina v. Berryhill*, No. 3:17-CV-1941, 2018 WL 3433290, at *5 (M.D. Pa. June 8, 2018), *report and recommendation adopted,* No. CV 3:17-1941, 2018 WL 3426408 (M.D. Pa. July 16, 2018) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)) (internal quotation marks omitted).

the basis for his finding."[22] In this case, no such explication or indication are provided as it relates to the ALJ's inclusion of five scheduled bathroom breaks in the RFC. It is quite unclear from the ALJ's decision how he arrived at an RFC including five scheduled bathroom breaks, as opposed to any other number of breaks or unscheduled breaks. (Admin Tr. 20; Doc. 15-2, p. 21). The Court cannot determine what the basis was for the ALJ's bathroom break finding was or what evidence he relied on to support this finding.[23] (Admin Tr. 20; Doc. 15-2, p. 21).

While the ALJ stated that he accounted for Plaintiff's urinary frequency by including five scheduled bathroom breaks, this did not relieve him of his duty to explain how that determination is supported by the record and to cite to evidence supporting his finding. This is particularly true where it appears the ALJ discounted Plaintiff's testimony regarding her urinary frequency. Whether the ALJ discounted this portion of Plaintiff's testimony is unclear, an error in itself as "the ALJ must indicate in his decision which evidence he has rejected and which he is relying on as

---

[22] *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999).

[23] More, while the ALJ listed five breaks in the RFC, it seems in reality there are less. The ALJ stated that Plaintiff may have one bathroom break "before and after work." (Admin. Tr. 20; Doc. 15-2, p. 21). It is unclear to the Court how this is a "break" from work when Plaintiff would not in fact be working during these "breaks" as they occur *before* and *after* work. It is also unclear how a bathroom break during what would almost certainly be a required lunch break is an accommodation for Plaintiff's urinary frequency as opposed to a standard and required break common to all employees.

the basis for his finding."[24] The ALJ made the broad assertion that he found that Plaintiff's statements regarding her symptoms were "not entirely consistent with the medical and other evidence in the record . . . ." (Admin. Tr. 21; Doc. 15-2, p. 22). The Court understands this broad and unspecified assertion to extend to all of Plaintiff's testimony. The ALJ did not particularly address Plaintiff's testimony that she uses the bathroom ten times per day for ten minutes each time, instead simply summarizing that Plaintiff testified "regarding incontinence and that the frequency of incontinence affects her everyday function." (Admin. Tr. 21, 85; Doc. 15-2, pp. 22, 57-58, 86). The ALJ did not explain why he discounted Plaintiff's testimony regarding her urinary frequency and the limitations it posed her or cite to other evidence contradicting Plaintiff's testimony on this issue. An "ALJ cannot reject evidence for no reason or for the wrong reason," and "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper."[25] Such an explanation is missing here.

The ALJ did summarize and cite to the medical records surrounding Plaintiff's urinary frequency issues, but failed to explain how they supported his discrediting of Plaintiff's testimony or otherwise supported his RFC finding of five scheduled

---

[24] *Schaudeck*, 181 F.3d at 433.
[25] *Cotter*, 642 F.2d at 706-07.

breaks. (Admin. Tr. 20-21, 23-24; Doc. 15-2, pp. 21-22, 24-25). The ALJ noted that Plaintiff was on a medication "she hopes will decrease her incontinence," that the placement of an Intrastim device allowed her to hold her urine for eight hours at work but that the device was removed, causing her symptoms to return, and had not yet been reimplanted though Plaintiff raised an interest in having it reimplanted after recovering from her mastectomy.[26] (Admin. Tr. 23-24; Doc. 15-2, p. 24-25). The ALJ provided no further explanation on how a device that helped Plaintiff in the past and was then removed, and a medication Plaintiff hopes in the future will decrease her incontinence, are relevant to her ability to hold her urine without that device and without that medication working such that five scheduled bathroom breaks during the day would accommodate her urinary frequency.

In sum, the ALJ failed to explain why he discounted Plaintiff's testimony regarding her urinary frequency. The ALJ failed to explain the basis on which part

---

[26] The Commissioner argues that "Plaintiff planned to have the device reimplanted after she recovered from her surgery, or less than 12-months later (Tr. 23-24, 2346)." (Doc. 28, p. 18). First, the ALJ does not mention in his decision that the device would have been replaced within twelve months and the ALJ's decision must stand or fall on what is written in it, not *post hoc* rationalizations of the Commissioner. Second, it is not clear from the record the Commissioner cites to that the device would have been replaced within twelve months. The record cited to indicates Plaintiff's urologist's plan was "to discuss replacement of an MRI compatible SNS device in 6 months after recovery from Mastectomy." (Admin Tr. 2346; Doc. 22, p. 129). A planned discussion is not a scheduled surgery date, nor is it an indication of when a surgery would be scheduled.

of the RFC, the finding of five scheduled bathroom breaks, rests as he is required to do.[27] Therefore we cannot say the ALJ's decision is supported by substantial evidence and remand is required.[28]

### C. PLAINTIFF'S REMAINING ARGUMENTS

Given that the Court finds it necessary to remand Plaintiff's case because the ALJ's decision is not supported by substantial evidence the Court will not address Plaintiff's remaining claims of error.[29]

[The next page contains the Conclusion]

---

[27] *Medina*, 2018 WL 3433290, at *5 (M.D. Pa. June 8, 2018).
[28] The Court expresses no opinion on how many bathroom breaks are appropriate in light of Plaintiff's urinary frequency or on whether they should be scheduled or unscheduled.
[29] *See Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. Dec. 30, 2015) (Cohn, M.J.), *report and recommendation adopted*, 156 F. Supp. 3d at 582 (M.D. Pa. Jan. 13, 2016) (Kane, J.) (explaining that "[a] remand may produce different results on these claims, making discussion of them moot.").

## V. CONCLUSION

Accordingly, Plaintiff's request for remand for a new hearing will be granted as follows:

(1) The Commissioner's final decision is VACATED.

(2) This case will be REMANDED to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

(3) Final judgment in Amanda M. E.'s favor will be issued separately.

(4) An appropriate order will be issued.

Date: December 6, 2023                    BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge